Coutu Lumber Company *vs.* Charles E. Coffin, *T. T.*
OCTOBER 25, 1937.
Present: Flynn, C. J., Moss, Capotosto, Baker and Condon, JJ.

Baker, J. This is an action brought against the town treasurer of the town of Johnston, in his official capacity, to recover for certain lumber allegedly sold by the plaintiff to the town. The case was heard in the superior court by a justice thereof sitting without a jury. A decision was rendered by him for the plaintiff for the amount of its claim

with interest, and the defendant thereupon duly prosecuted an exception to this court.

General laws 1923, chapter 96, section 1 in substance provides that all highways, causeways and bridges in any town shall be kept in repair so as to be safe and convenient for travelers at all seasons of the year, at the expense of the town under the direction of the town council. The mandatory character of this duty was referred to by this court in *Blair* v. *Granger*, C. T., 24 R. I. 17, and in *Eaton* v. *Follett*, C .T., 48 R. I. 189.

In the instant case, the defendant does not dispute that the lumber in question was delivered by the plaintiff to the town or to the highway commissioner for the town, and that such lumber was used on its highways, the greater part in repairing a wooden bridge on Central Pike. The defendant's chief ground for refusing to pay plaintiff's bill is his contention that the person who ordered the lumber from the plaintiff was not authorized to act for the town in placing such order, and, therefore, could not bind the town. In this connection the defendant has called to our attention the case of *McAleer* v. *Angell*, T. T., 19 R. I. 688, which holds in substance that one dealing with a municipal corporation is bound at his peril to inquire into the power of the municipality or its agents to make the contract or do the act involved, and that a municipal corporation is bound only by the acts of its agents done within the scope of their authority. In our judgment these general principles of law set out in the above case are correct and they have our approval. It becomes necessary, however, to determine their applicability to the facts in the case at bar. The record before us shows that we are confronted by an unusual situation arising by reason of work done under emergency relief legislation, the federal or state government providing money to pay for the labor involved, other specific funds being furnished to purchase the materials used and specific arrangements being made for carrying on the work.

It appears from the evidence that the lumber in issue was ordered from the plaintiff by one Paulson, who, at that time, was a resident of Johnston and an engineer connected with the state highway department. The work on which the lumber was used was done under the supervision of an advisory committee of the town, consisting of three residents thereof, one of whom was the town solicitor. The evidence clearly shows that, at the time the bill was contracted, the town had money with which to meet the plaintiff's claim, either out of certain special funds or out of a regular yearly bridge appropriation.

In regard to the lumber obtained from the plaintiff, Paulson gave evidence that he told the lumber company the town was making the purchase. He testified: "I took orders through the engineer on the job and merely telephoned for the material. . . . I was ordered by the engineer to get it, in Johnston." It also appears from the evidence that the engineer in question was one Thompson, who was connected with the advisory committee of the town of Johnston, and took orders from that committee. Paulson testified that: "I was merely using the telephone for Mr. Thompson. He was right there at the telephone when I called them up in my office. . . . I was merely acting for Mr. Thompson as their engineer." The following testimony was given by the highway commissioner and engineer of the town: "I went around with Mr. Thompson and measured up the bridges and told him what was required. . . . The bridges were very bad and we went around and measured them up and ordered the lumber."

Although the actual order to the plaintiff was given by Paulson, who was not a town officer, it is clear from all the evidence, having in mind the duty imposed on the town by the statute above referred to, that Paulson in placing the order was acting on behalf of the engineer connected with the town's advisory committee which was in charge of the work, and that, therefore, the order was, in effect, that of the advisory committee, and that the town became liable

for the plaintiff's bill. This conclusion is confirmed by evidence which shows that the lumber was accepted and used in the work being done under the town's advisory committee, without any question being raised as to the source of the lumber, or any attempt being made to return it; and also by proof that the practice employed in the present instance had been adopted before, and that the plaintiff had earlier filled orders for lumber given it in a similar manner, which orders had been honored and the bills therefor duly paid.

The fact that the lumber furnished by the plaintiff was used on a relief project in which the state and federal governments were involved is of no assistance to the defendant on the record in the present case. Whatever the understanding or relationship may have been between the town, the state, and the federal government in regard to the work and the responsibility for its payment, it is clear that as far as the plaintiff and the town were concerned they were merely creditor and debtor.

The defendant also complains that the trial justice expressed his views concerning the merits of the controversy while the plaintiff's case was going in, and before the defendant had presented its evidence. Unquestionably certain statements made by the trial justice as the case proceeded were injudicious. It may be noted, however, that no request was made by the defendant to pass the case when the remarks complained of were made, nor was any exception taken by the defendant to any action, statement or ruling of the trial justice in that connection. Under these circumstances, we are of the opinion that the defendant is not now in a position to urge before us that certain views expressed by the justice presiding at the trial constitute reversible error. Moreover, it clearly appears that the defendant put in its defense and was not prevented in any way from introducing all the evidence it desired pertaining to the issues involved. The testimony presented in this case was not in conflict, and the trial justice gave his de-

cision after hearing and considering all the evidence. In fact, the question ultimately presented for his determination was virtually one of law, and, apart from any matter of bias, we find that his decision was correct. The situation revealed in the instant case is entirely dissimilar to that appearing in *Harvey* v. *Brown*, 56 R. I. 34, cited by the defendant, where the trial justice, in making his decision, relied on statements of counsel and not on the evidence.

The defendant's exception is overruled and the case is remitted to the superior court for the entry of judgment on the decision.

*Quinn, Kernan & Quinn, Michael DeCiantis,* for plaintiff.

*Arthur N. Votolato,* for defendant.